CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

APR 0 8 2014

JULIA C. DUDLEY, CLERK
BY: /s/ Kotson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal Action No.: 5:13cr00030-3 |
| | ) |
| v. | ) |
| | ) By: Hon. Michael F. Urbanski |
| | ) United States District Judge |
| GUY HARVEY SPRUHAN, IV. | ) |
| | ) |

## MEMORANDUM OPINION

The court entered an Order on February 28, 2014, denying defendant Guy Harvey Spruhan, IV's motion for substitution of counsel. Dkt. No. 120. The court now fully sets forth its reasoning below.

### I.

The Government has alleged a decade-long methamphetamine distribution conspiracy in a multi-count, multi-defendant Indictment. Spruhan is named in Count One. On January 8, 2014, Sruphan moved to substitute counsel. Dkt. No. 90. The Government objected, asserting that Spruhan's proposed counsel, Aaron Cook, Esq., had previously represented two witnesses cooperating with the Government and thus had a conflict which prevented him from representing Spruhan. Dkt. Nos. 92, 100. A hearing was held on January 29, 2014. At the hearing, the Government provided the identities of the cooperating witnesses: Danny Pryor and Doug Rankin. However, the Government was unable to provide any information at the hearing about the specific nature of those witnesses' expected testimony as to Spruhan. Because Spruhan was not a target of the investigation at the time Pryor and Rankin testified before the grand jury, the Government had not questioned these witnesses on Spruhan's alleged involvement in the charged conspiracy.

Instead, the Government argued at the hearing that there was conflict based on the testimony these witnesses would give as to the amount of drugs distributed by the alleged conspiracy.

Pursuant to Pinkerton v. United States, 328 U.S. 640 (1946), if the Government proves its case, Spruhan will be legally responsible for the entire drug weight distributed by the alleged conspiracy that was reasonably foreseeable to him. Sawyer v. United States, No. 2:09CV634, 2011 WL 127144, at *2 n.3 (E.D. Va. Jan. 13, 2011). However, in United States v. Cline, No. 1:12CR00044, 2013 WL 2237742 (W.D. Va. May 21, 2013), the Honorable James P. Jones declined to disqualify a law firm where one of the firm's attorneys represented a cooperating witness (Ritchie) and another attorney at the firm represented the defendant proceeding to trail (Cline) where the cooperating witness was merely providing background information about the alleged criminal scheme, not direct evidence against that defendant. Specifically, Judge Jones found that

> representation of Ritchie and Cline by attorneys in the same law firm does not raise any significant risk of an impermissible conflict of interest. Ritchie's testimony will provide only background information about the alleged check-cashing scheme and will not supply any particular link to Cline. Indeed, Ritchie does not know Cline or anything about him. As such, Cline's attorneys do not foresee a need to vigorously cross-examine Ritchie or impeach her credibility.

Id. at *3. Accordingly, this court, sensitive to the absolutely essential nature of the Sixth Amendment right to counsel and recognizing the fact that "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment," Wheat v. United States, 486 U.S. 153, 159 (1988), asked the Government to provide further information detailing the testimony it expected Pryor and Rankin to provide against Spruhan. Cf. id. at 160 ("[A] court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel."); United States v. Tatum, 943 F.2d 370, 379 (4th Cir. 1991) ("When the risk of a conflict of interest is brought to the attention of the trial court . . . the court has the responsibility to investigate further . . . .").

On February 12, 2014, the Government provided the information the court requested. Dkt. No. 115. Specifically, the Government proffered that it had interviewed Pryor and, upon being presented a photo spread, Pryor

> immediately pointed out defendant Spruhan and another individual in the photo spread, and advised [] that he has met them both before, and that he knows they both sold drugs for someone he identified as "Tito". He also named defendant Spruhan and the other individual by name. Pryor further advised that the other individual had previously told him that he and Spruhan "moved a lot" of drugs for Tito together.

Id. at 5 (internal footnotes omitted). Furthermore, the Government reports that Pryor is interested in reducing his sentence through a Federal Rule of Criminal Procedure 35(b) ("Rule 35") motion. Id. at 6.

Despite this additional information, Spruhan persisted in arguing that Cook was not conflicted out of representing him. Dkt. No. 116. Specifically, Spruhan argued that Pryor had provided "*no direct evidence*" of his involvement in the alleged conspiracy and that the only evidence Pryor was offering was a hearsay statement that "does not carry much information." Id. at 2-3 (emphasis original). Furthermore, Spruhan asserted, it would not be Pryor's credibility, but the declarant's, that would be at issue during trial. Id. at 3.

## II.

The Sixth Amendment right to counsel is arguably the single most critical right a criminal defendant possesses in our system of justice, for without the assistance of counsel many defendants would be unable to assert the other rights they are afforded.[1] Cf. Cahill v. Rushen, 678 F.2d 791,

---

[1] In the seminal case of Gideon v. Wainwright, Justice Black quoted Justice Sutherland:

> Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step

3

799 (9th Cir. 1982) (Wallace, J., dissenting) ("It does not belittle the other constitutional rights enjoyed by criminal defendants to state that this right to counsel is perhaps the most important of all."). Furthermore, as previously noted, "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment." Wheat, 486 U.S. at 159; cf. Sanford v. Commonwealth of Virginia, 687 F. Supp. 2d 591, 602 (E.D. Va. 2009) (noting in the civil context that it is "important in our system of justice that parties be free to retain counsel of their choice").

This right, however, is not absolute. Indeed, the Supreme Court has recognized that "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects." Wheat, 486 U.S. at 159. Importantly, a defendant's choice of counsel can be overcome by a showing of a conflict or a serious potential for conflict. Id. at 164; see also Cline, 2013 WL 2237742, at *2 (citing Wheat, 486 U.S. at 164); United States v. Edwards, No. 1:11CR161-1, 2012 WL 959318, at *3 (M.D.N.C. Mar. 21, 2012) (same). This is because "'the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.'" United States v. Urutyan, 564 F.3d 679, 686 (4th Cir. 2009) (quoting Wheat, 486 U.S. at 159). Thus, a defendant's choice of counsel may be trumped by the "paramount concern" of "the judiciary's 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" Id. (quoting Wheat, 486 U.S. at 160).

The Fourth Circuit has outlined the specific concerns that arise when an attorney faces a former client in the witness box during the representation of a current client. The attorney's

---

       in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction
       because he does not know how to establish his innocence.

Gideon v. Wainwright, 372 U.S. 335, 344-45 (1963) (internal quotation marks omitted) (quoting Powell v. State of Ala., 287 U.S. 45, 68-69 (1932)).

> continuing duty to [a] former client[] may interfere with his consideration of all facts and options for his current client. When the attorney is actively engaged in legal representation which requires him to account to two masters, an actual conflict exists when it can be shown that he took action on behalf of one. The effect of his action of necessity will adversely affect the appropriate defense of the other.

United States v. Tatum, 943 F.2d 370, 376 (4th Cir. 1991). In particular, the Fourth Circuit noted that "the failure of defense counsel to cross-examine a prosecution witness whose testimony is material" would be, if attributed to a conflict, a lapse in a defense. Id. This concern that a defense counsel be willing and able to perform a vigorous cross-examination of a Government witnesses is warranted, as "cross-examination is both a fundamental right and perhaps the most critical tool to be employed in the representation of a criminal defendant." Sherman v. Smith, 89 F.3d 1134, 1149 (4th Cir. 1996) (citing Pointer v. Texas, 380 U.S. 400, 404-05 (1965)). Not only has the Fourth Circuit upheld a district court's decision to disqualify counsel who had previously represented a witness at his current client's trial, but it has also reversed for abuse of discretion where the district court failed to disqualify counsel who had represented the prosecution's "star witness" in a prior trial. United States v. Basham, 561 F.3d 302, 323-24 (4th Cir. 2009) (discussing these prior decisions and finding that the district court did not abuse its discretion in disqualifying a criminal defendants choice of counsel).

### III.

It is clear that a material conflict of interest prevents Cook from representing Spruhan here. Not only have Pryor and Rankin, Cook's former clients, been identified as witnesses for the Government, but Pryor has identified Spruhan as a member of the alleged conspiracy. Spruhan's assertions to the contrary notwithstanding, Pryor's identification of him and another as persons who sold drugs for "Tito" constitutes direct evidence. Spruhan may argue that the weight of this evidence is tempered by the terms "drugs" and "a lot," which he characterizes as vague, Dkt. No. 116, at 3, but it is evidence against him regardless. Additionally, while Spruhan may argue that Cook

can attack this evidence without attacking Pryor's credibility by instead focusing on the credibility of the declarant, Cook would be forced to forgo even considering an approach in which he attempted to discredit Pryor as misremembering, misunderstanding, or misrepresenting the statement incriminating Spruhan. Where a defense attorney is prevented from considering a particular tactical option by obligations to a former client, there is a conflict even if another viable tactical route remains available. Tatum, 943 F.2d at 376 (noting that there is a conflict where an attorney's continuing duty to former clients "interfere[s] with his consideration of all facts and options for his current client"); cf. Basham, 561 F.3d at 324 (finding the district court did not abuse its discretion in disqualifying a defendant's choice of counsel who could have possibly been called to testify themselves because in a subsequent appeal the defendant "could argue that his original attorneys had a vested interest in trying the case a certain way so as to minimize the possibility, however remote, that they might be called to testify").[2]

Furthermore, Pryor hopes to be the beneficiary of a Rule 35 motion. His interest, therefore, is in providing the greatest extent of relevant and accurate information possible that helps the Government prove its allegation. This, of course, is directly counter to Spruhan's interests. It therefore clear that the interest of Cook's would-be current client conflicts with the interests of his former client. The court finds that a conflict of this nature cannot be overcome by a waiver. Urutyan, 564 F.3d at 686 (citing Wheat, 486 U.S. at 164) ("[A] district court may disqualify a defendant's counsel of choice in spite of an express waiver by that defendant of any conflict of

---

[2] Spruhan argues that it cannot currently be determined if the statements reportedly heard by Pryor were made in furtherance of the conspiracy such that they would be admissible under the co-conspirator hearsay exception. Even so, and even further assuming that this is the only evidence Pryor would offer against Sruphan, there is at minimum a significant likelihood that the statement will prove to be admissible. The presumption in favor of a defendant's choice of counsel can be overcome by a "serious potential for conflict" of this sort. Urutyan, 564 F.3d at 687 (internal quotations marks omitted) (quoting United States v. Basham, 561 F.3d 302, 323 (4th Cir. 2009)). Indeed, "'[a] district court has an obligation to foresee problems over representation that might arise at trial and head them off beforehand.'" Edwards, 2012 WL 959318, at *3 (quoting United States v. Howard, 115 F.3d 1151, 1155 (4th Cir. 1997)). Furthermore, the consequences if a conflict did develop in the midst of trial would be significant. Because "[l]egal representation which is adversely affected by actual conflicts of interest is never considered harmless error," United States v. Tatum, 943 F.2d 370, 375 (4th Cir. 1991), the court would be compelled to order a new trial, resulting in a significant waste of judicial resources.

interest.") Spruhan's and Pryor's interests are simply too adverse for Cook to serve as Spruhan's counsel in this case.

IV.

For the foregoing reasons, Spruhan's motion for substitution of counsel was denied.

Enter: April 8, 2014

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge