CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 26 2023

LAURA A. AUSTIN, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 5:13-cr-00030 |
| v. | ) |
| | ) By:   Michael F. Urbanski |
| GUY HARVEY SPRUHAN, | ) Chief United States District Judge |
| Defendant-Petitioner | ) |

## MEMORANDUM OPINION

This matter comes before the court on defendant Guy Harvey Spruhan's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 584. The government responded and Spruhan has replied. ECF Nos. 589, 590. For the reasons stated herein, the court will **GRANT in part** Spruhan's motion and reduce his sentence to 156 months.

## BACKGROUND

On December 5, 2013, a Grand Jury returned an 8-count Indictment charging Spruhan and six codefendants with various offenses based on distribution of methamphetamine. Indictment, ECF No. 3. Spruhan was charged with one count of conspiring to distribute and possess with intent to distribute a detectable amount of methamphetamine, and to conspiring to distribute and to possess with intent to distribute a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C). It was alleged that one of the objects of the conspiracy was to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

On April 25, 2014, the government gave notice of enhanced punishment as to Spruhan pursuant to 21 U.S.C. § 851.[1] The notice was based on Spruhan's previous conviction in state court for manufacturing, selling, giving, distributing, or possessing with intent to manufacture a controlled substance. ECF No. 191. Spruhan served approximately seven months on the state court conviction. Presentence Investigation Report (PSR), ECF No. 319 ¶ 42.

On July 1, 2014, Spruhan entered into a Rule 11(c)(1)(C) plea agreement in which he pled guilty to Count 1 of the indictment, distributing and possessing with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. The parties agreed that he would be held responsible for distributing at least 15 kilograms of methamphetamine. As part of the agreement, the United States dismissed the § 851 enhancement and the parties agreed to a sentencing range of 144 to 180 months. Plea Agreement, ECF No. 233. Spruhan pled guilty on July 22, 2014. ECF No. 252.

Without the § 851 enhancement, Spruhan faced a 10-year statutory minimum term of imprisonment. 21 U.S.C. § 841(b)(1)(A). Had the government not withdrawn the enhancement, his mandatory minimum sentence would have been 20 years. Id. Applying the United States Sentencing Guidelines (USSG or guidelines), Spruhan had a base offense level of 38 based on the distribution of 15 kilograms of methamphetamine. PSR, ECF No. 319 ¶ 29; USSG § 2D1.1(c)(1). He received a 2-level increase because he involved a minor in the commission of the offense and a 3-level decrease for acceptance of responsibility, for a total

---

[1] Section 851 provides the following: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851.

2

offense level of 37. Id. ¶¶ 29–38. His offense level combined with his criminal history category of III gave him a guidelines range of 262 to 327 months. Id. ¶¶ 45, 75.

On October 10, 2014, Spruhan was sentenced to a term of 180 months to be followed by a 5-year term of supervised release. On November 28, 2015, Spruhan filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, alleging he received ineffective assistance of counsel when his attorney did not object to the finding in the PSR that Spruhan used or attempted to use a minor to commit the offense or avoid detection of, or apprehension for, the offense and when he failed to argue mitigating factors at sentencing. ECF Nos. 393, 393-1. The court dismissed the § 2255 motion on June 23, 2016. ECF Nos. 465, 466.

On October 28, 2019, Spruhan filed a motion to reduce his sentence in light of Hughes v. United States, 138 S.Ct. 1765 (2018), and pursuant to 18 U.S.C. § 3582(2). ECF Nos. 490, 497. He argued that he was entitled to a reduction in his sentence pursuant to Amendment 782 to the United States Sentencing Guidelines. If Amendment 782 were applicable to him, his guidelines sentencing range would have been 210 to 262 months. Spruhan recognized that USSG § 1B1.10(b)(2)(A) made Amendment 782 inapplicable to him because it prohibits reduction of a sentence if the original term of imprisonment was less than the minimum amended guideline range. He argued that the exception in § 1B1.10(b)(2)(A) conflicted with 28 U.S.C. § 991(b) and that it violated the Equal Protection Clause of the Constitution. The court denied relief on October 28, 2019. Mem. Op. and Order, ECF Nos. 519, 520. Spruhan appealed, and the Fourth Circuit Court of Appeals affirmed the denial of relief on March 2, 2021. United States v. Spruhan, 989 F.3d 266 (4th Cir. 2021). Spruhan has been in custody since December 2013.

3

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Spruhan's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

### A. Exhaustion

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129-30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts

4

all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131.

Spruhan submitted a compassionate release request to the warden at his facility on March 4, 2021. ECF No. 584-2. More than 30 days have passed since that request, making this motion timely in accordance with § 3582(c)(1)(A). The government does not dispute that Spruhan has satisfied this threshold requirement. Therefore, the court finds that Spruhan has fully satisfied the statute's administrative exhaustion requirement.

## B. Extraordinary and Compelling Reasons

The court must next consider whether there are any "extraordinary and compelling reasons" that would warrant "reduc[ing] the term of imprisonment" imposed in Spruhan's case. 18 U.S.C. § 3582(c)(1)(A). In United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020), the Fourth Circuit held that district courts may consider "any extraordinary and compelling reason for [compassionate] release that a defendant might raise." Id. (citing United States v. Brooker, 976 F.3d 228, 239 (2d Cir. 2020)). In so holding, the court rejected the notion that district courts are constrained by the policy statement found in USSG § 1B1.13 and the application note that accompanies the policy statement. See discussion, McCoy, 981 F.3d at 280–84.

### 1. Amendment 782

In this case, Spruhan argues that USSG § 1B1.10(b)(2)(A) creates a sentencing disparity because it prevents defendants like him, who were sentenced below the amended sentencing guideline promulgated by Amendment 782, from receiving a reduced sentence. In essence, he

5

is repackaging the argument he made to this court and the Fourth Circuit that § 1B1.10(b)(2)(A) creates an unfair sentencing disparity.

Amendment 782, promulgated by the Sentencing Commission, lowered the base offense level for most federal drug offenses. See USSG app. C, amend. 782 (2014); id., amend. 788 (applying Amendment 782 retroactively). Defendants seeking a sentence reduction pursuant to the amendment may file a motion to reduce their sentences under 18 U.S.C. § 3582(c)(2), which provides that a district court may reduce a defendant's sentence where the original term of imprisonment was based on a sentencing range that subsequently was lowered by the Sentencing Commission. However, the sentence reductions must be consistent with applicable policy statements issued by the Sentencing Commission. Id. One such policy statement is § 1B1.10(b)(2)(A), which provides that courts may not reduce a sentence "to a term that is less than the minimum of the amended guideline range" unless the defendant's original sentence resulted from a downward departure for substantial assistance to Government authorities. Spruhan, 989 F.3d at 268–69 (citing USSG § 1B1.10 and United States v. Dunphy, 551 F.3d 247, 252 (4th Cir. 2009)). Thus, defendants sentenced to a term below the minimum guidelines sentence, for a reason other than providing the government with substantial assistance, are not eligible for a reduction under Amendment 782.

The practical result of that prohibition on reductions is that defendants who received downward departures and variances from the guidelines in their original sentences are ineligible for a further reduction if their original sentence was below the amended guidelines sentence, unless they were sentenced after consideration of a substantial assistance motion, while defendants who did not receive a downward departure or variance below the amended

6

guidelines sentence are eligible for a reduction. As the Ninth Circuit observed in <u>United States v. Padilla-Diaz</u>, 862 F.3d 856, 861 (9th Cir. 2017):

> Under § 1B1.10(b)(2)(A), defendants who originally had lower sentences may be awarded the same sentences in § 3582(c)(2) proceedings as offenders who originally had higher sentences. That is, sentences that were initially tailored to avoid unwarranted disparities and to account for individualized circumstances will now converge at the low end of the amended guideline range.

In Spruhan's case, the parties agreed to a binding sentencing range of 144 to 180 months. The court accepted the plea agreement, and sentenced Spruhan to 180 months, which was 82 months below the bottom of the applicable guidelines range of 262 to 327 months. After Amendment 782, the applicable sentencing range was reduced to 210 to 262 months, making Spruhan's 180-month sentence only 30 months below the amended guidelines range. Spruhan argues that § 1B1.10(b)(2)(A) operates to deprive him of the benefit of the bargain he made with the government, that he would receive a sentence 82 months, or 31 percent, below the bottom of the guidelines range. He further argues that § 1B1.10(b)(2)(A) creates a sentencing disparity between him and his co-defendants, many of whom received sentence reductions under Amendment 782, and that this disparity is an extraordinary and compelling reason warranting a sentence reduction.

The court disagrees and finds that although Spruhan is precluded by § 1B1.10(b)(2)(A) from receiving a sentence reduction under Amendment 782, that circumstance does not present an extraordinary and compelling reason for a sentence reduction. Spruhan is correct that under § 1B1.10(b)(2)(A), defendants who originally had lower sentences may be awarded the same sentence in § 3582(c)(2) proceedings as offenders who had higher original sentences. And to be sure, courts have wondered why the distinction exists. <u>See</u> <u>United States v.</u>

7

Montanez, 717 F.3d 287, 294 (2d Cir. 2013) (questioning, as a matter of policy, why "a court should not have the discretion to give defendants the benefit of § 4A1.3 departures during sentencing reduction proceedings because "[a] criminal history category that exaggerates a defendant's past crimes during an initial sentencing will continue to do so at a reduction proceeding); United States v. Hogan, 722 F.3d 55, 63 (1st Cir. 2013) (same).

Nevertheless, courts have recognized that "Congress has given the Commission the authority to resolve these policy questions." Montanez, 717 F.3d at 294–95 (citing Dillon v. United States, 560 U.S. 817, 827–29 (2010)). See also United States v. Leatch, 858 F.3d 974, 979 (5th Cir. 2017) ("[A]s it is solely through the Commission's grace that these retroactive reductions come about, it is for that body to decide the wisdom of limits on the scope of such reductions."); United States v. Gutierrez, 859 F.3d 1261, 1267 (10th Cir. 2017) (noting that while courts have questioned the Commission's policy judgment in this area, they have also recognized that "such judgments are for the Commission, not the courts, to make.") Accordingly, because the authority to promulgate and amend the guidelines lies with the Sentencing Commission and the guidelines preclude Spruhan from being eligible for a sentence reduction under Amendment 782, the fact that he is ineligible does not present an extraordinary and compelling reason warranting a sentence reduction under § 3582(c)(2).[2]

---

[2] There is a dearth of authority on this question and the two cases that were found reached opposite conclusions. In United States v. Barsoum, No. 8:11-cr-548-T-33CPT, 2020 WL 3402341 (M.D. Fla. June 19, 2020), pursuant to Amendment 782, a court had previously granted a reduced sentence of 188 months to a defendant, which was the bottom of the amended guidelines range, but had not included the original 3-year downward variance, finding it was not authorized to do so under USSG § 1B1.10(b)(2)(A). After passage of the First Step Act, the defendant argued that the court was now free to exercise its discretion and grant him the same 3-year departure from the bottom of the guidelines. The court disagreed, finding that the defendant had not established an extraordinary and compelling reason because the 188-month sentence was appropriate, and no further reduction was warranted. Id., 2020 WL 3402341, at * 2. In United States v. Quinn, No. 10-20129-02-KHV, 2021 WL 1854192 (D. Kan. May 10, 2021), the court found that "[t]he uneven application of Amendment 782

Nor does the fact that application of § 1B1.10 resulted in some of Spruhan's codefendants receiving Amendment 782 sentence reductions while he did not, create an extraordinary and compelling reason for a sentence reduction under the compassionate release statute. Differentiating between sentence reductions for defendants who offered substantial assistance to the government and those who did not is consistent with the guidelines and with 18 U.S.C. § 3553(e), both of which reward substantial assistance to the government with shorter sentences. Section 5K1.1 of the sentencing guidelines provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." In turn, this guideline comports with the directive from Congress set forth in 28 U.S.C. § 994(n):

> The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

See also 18 U.S.C. § 3553(e) ("Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.")

---

to the various defendants in this conspiracy who pled guilty under Rule 11(c)(1)(C) and who went to trial appears to be an extraordinary and compelling reason for a reduced sentence." However, neither court offered any analysis explaining how it arrived at its conclusion.

9

Four of Spruhan's six codefendants received sentence reductions, but all of them provided substantial assistance to the government, while Spruhan did not. Had Spruhan provided similar assistance, he would have been eligible for an Amendment 782 sentence reduction. Therefore, the differences in their sentence reductions under Amendment 782 do not present an extraordinary and compelling reason for a sentence reduction under the compassionate release statute.

### 2. Change in Statutory Minimum Sentence

Spruhan also argues that if he were sentenced today, the landscape in which his plea bargain was negotiated would be substantially different. When Spruhan originally was sentenced, he was subject to a 20-year minimum sentence under 21 U.S.C. § 841(b)(1)(A), because he had a prior felony drug offense. Prior to the First Step Act, § 841(b)(1)(A) provided that if a person violated the statute "after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years . . . ." 21 U.S.C. § 841(b)(1)(A) (2010). The First Step Act amended the statute to provide that if a person violated the statute "after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years . . . ." 21 U.S.C. § 841(b)(1)(A) (2018).

The term "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct related to narcotic drugs . . . ." 21 U.S.C. § 802(44). The term "serious drug felony" is defined as an offense described in 18 U.S.C. § 924(e)(2) for which the offender served a term of imprisonment of more than 12 months. 21

10

U.S.C. § 802(57). Thus, today, in order for a sentence to be increased under § 841(b)(1)(A), a person must have a prior conviction for a "serious drug felony" rather than a "felony drug offense," meaning he must have served more than 12 months on the offense.[3]

It is undisputed that Spruhan did not serve 12 months on the underlying drug charge that was cited as the predicate offense for the § 851 enhancement. Rather, he served approximately 7 months. PSR, ECF No. 319 ¶ 42. If Spruhan were sentenced for the same conduct today and the § 851 enhancement did not apply, he would be subject to a mandatory minimum sentence of 10 years and his guidelines sentence, after Amendment 782, would be 210 to 262 months. 21 U.S.C. § 841(b)(1)(A); USSG Ch 5 Pt A. He argues that reducing the bottom of the guidelines sentence by 31 percent would have resulted in a sentence of 144 months.

The court agrees that in the context of Spruhan's plea agreement, with the § 851 enhancement off the bargaining table, the plea agreement framework would have been substantially different. Namely, the government would not have been able to threaten Spruhan with a 240-month sentence and Spruhan would have had less incentive to agree to a sentencing range of 144 to 180 months.

In McCoy, 981 F.3d at 285–86, the Fourth Circuit found that a "gross disparity" between a petitioner's sentence at the time of conviction and the sentence that would be imposed under current law can be considered an "extraordinary and compelling reason" for

---

[3] Spruhan does not argue that the decrease in the sentence from 20 years to 15 years is relevant to his case.

granting compassionate release.[4] Spruhan argues that if he were sentenced today, he most likely would be facing a sentence between the statutory mandatory minimum of 120 months and 144 months, which would be a 31 percent reduction from the bottom of the guidelines. He argues that the 36-month difference between his original sentence of 180 months and the sentence he likely would receive today is a gross disparity that provides an extraordinary and compelling reason to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

The government offers several arguments in response. First, it argues that McCoy was wrongly decided and that nonretroactive statutory changes to sentencing laws should not form the basis for compassionate release. However, McCoy continues to be the law in the Fourth Circuit. See, e.g. United States v. Gutierrez, No. 21-7092, 2023 WL 245001, at *2 n.1 (4th Cir. Jan. 18, 2023) (reiterating holding in McCoy that there are no applicable Sentencing Commission policy statements in compassionate release petitions filed by parties other than the BOP); United States v. Hargrove, 30 F.4th 189, 194–95 (4th Cir. 2022) (same); and United States v. Davis, No. 21-6960, 2022 WL 127900 (4th Cir. Jan. 13, 2022) (per curiam) (citing McCoy and its holding that when a defendant, rather than the BOP, files a motion for compassionate release, the court may consider any extraordinary and compelling reason for release that a defendant might raise). Therefore, the court will follow the holding in McCoy that a gross disparity in sentencing can warrant compassionate release.

The government also argues that the disparity between the sentence Spruhan received in 2014 and the sentence he would receive for the same conduct today is not an extraordinary

---

[4] In McCoy, one petitioner originally was sentenced to just over 35 years and his sentence was reduced to time served, or approximately 17 years. The three other petitioners were sentenced to 45 years and their sentences were reduced to time served, or approximately 25 years. McCoy, 981 F.3d at 277–79.

and compelling reason to reduce his sentence. It claims that non-retroactive changes in sentencing law are not necessarily extraordinary and compelling and that a defendant must show that his circumstances are beyond what is "usual, customary, regular, or common." Resp. in Opp'n to Def's Mot. for Compassionate Release, ECF No. 592 at 5 (citing Black's Law Dictionary, (11th ed. 2019)). The government goes on to argue that Spruhan cannot meet the heightened standard of "extraordinary and compelling" because the sentence that he received was the result of a plea bargain and was not of an "unusual length" given that it was substantially below the guidelines range. See McCoy, 981 F.3d at 285 (finding that one factor in its determination that defendants presented an extraordinary and compelling reason for a sentence reduction was the "sheer and unusual length of the sentences").

However, the court believes that the government is reading McCoy too narrowly. McCoy made clear that in the context of "stacked" sentences imposed under 18 U.S.C. § 924(c), "the enormous disparity between [the original] sentence and the sentence a defendant would receive today can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." McCoy, 981 F.3d at 285. This court and others have applied the McCoy reasoning when considering motions for compassionate release based on the claim that a defendant would no longer be subject to a longer sentence based on a § 851 enhancement. See, e.g., United States v. Gamboa, No. 2:08-cr-00151-2, 2022 WL 275528 (S.D.W.V. Jan. 28, 2022) (quoting United States v. Johnson, No. 2:07-cr-0924, 2021 WL 2379474 (D.S.C. June 10, 2021)) ("[T]he logic 'espoused in McCoy ... applies with equal force to the similar disparities brought about by the First-Step-Act changes to [21 U.S.C.] §§ 841 and 851.'"); United States v. Richards, No. 3:11-CR-31, 2021 WL 3861599 (W.D. Va. Aug. 30, 2021)

13

(quoting United States v. Stuart, No. 5:92-CR-114-BR-3, 2020 WL 7232074, at *3 (E.D.N.C. Dec. 8, 2020) ("Following McCoy, other district courts in this Circuit have found that they 'may consider changes in sentencing law—even nonretroactive one—in assessing whether a defendant has shown extraordinary and compelling reasons warrant a reduction in his sentence.'"); Babb v. United States, No. ELH-04-0190, 2021 WL 2315459, at *12 (D. Md. June 4, 2021) (concluding that court has authority under McCoy to consider legislative change to § 851 in conducting review of motion for compassionate release); United States v. Lii, 528 F. Supp.3d 1153 (D. Haw. Mar. 23, 2021) (applying reasoning in McCoy to reduce a life sentence based on two prior state court convictions for relatively minor drug offenses); and United States v. Williams, No. 5:12cr14, 2020 WL 5834673 (W.D. Va. Sept. 30, 2020) (same).

Additionally, the fact that the difference in the two sentences is three years, and not the larger differences cited in McCoy, is not dispositive. This court found in United States v. Shaw, No. 5:15-cr-00025, 2021 WL 3007266 (W.D. Va. July 15, 2021), that a sentencing disparity of 22 months was an extraordinary and compelling reason to grant a sentence reduction. Other courts have found similar differences in sentences to qualify as "extraordinary and compelling reasons" to reduce a sentence. See United States v. Williams, No. 14-cr-428, 2021 WL 5827327 (E.D. Va. Dec. 8, 2021) (finding sentence more than three years longer than it would have been were defendant convicted today to be an extraordinary and compelling reason for compassionate release); and United States v. Brown, No. 3:15-cr-00017, 3:06-cr-00021, 2021 WL 2389881, at *10 (W.D. Va. June 11, 2021) (finding 74-month difference in sentence defendant would have received if sentenced today to be a "gross disparity" and thus an extraordinary and compelling reason to warrant a sentence reduction).

14

The court finds that the 3-year disparity between Spruhan's current sentence and the sentence he would likely be given for the same conduct today, meets the threshold discussed in McCoy, and is an "extraordinary and compelling" reason to warrant a sentence reduction under § 3582(c)(1)(A).

### C. 18 U.S.C. § 3553(a) Factors

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by

15

act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission . . . .

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Looking first at the nature and circumstances of the offense, Spruhan was a member of a large and long-running conspiracy that distributed methamphetamine, cocaine, and cocaine base in the Harrisonburg area of Virginia and also in West Virginia. PSR, ECF No. 319 ¶ 15. According to the Statement of Facts, Spruhan used and was addicted to methamphetamine when he was involved in the conspiracy. ECF No. 254. Beginning in or around 2006, when Spruhan was approximately 22 years old, he began supplying two underage women with "ice," a purer version of methamphetamine, to sell. PSR, ECF No. 319 ¶ 16–17. In 2008, Spruhan was arrested by state law enforcement authorities for selling methamphetamine. While on bond pending those charges he continued to sell "ice." Id. ¶ 18. In his federal prosecution, the parties agreed that Spruhan was responsible for distributing at least 15 kilograms of methamphetamine throughout the conspiracy. Id. ¶ 23. The court is familiar with the destruction wrought in communities by methamphetamine distribution and finds it additionally egregious that Spruhan involved minors in the distribution of the drug. Thus, Spruhan's participation in this conspiracy weighs against reducing his sentence.

16

Turning to the history and characteristics of the defendant, Spruhan reported that he had been diagnosed with attention deficit disorder as a child and with bipolar disorder as a teenager. Id. ¶ 60. It also was reported that he had a history of "cutting" and of violent outbursts. He began using methamphetamine when he was 19 years old and used it from 2004 through 2013. He also used marijuana and alcohol frequently. Id. ¶ 62. Spruhan had prior convictions for possession of marijuana, assault and battery, destruction of property, and manufacturing of a controlled substance. Id. ¶¶ 40–42.

At the sentencing hearing, the court sentenced Spruhan to 180 months, the high end of the negotiated range, noting that Spruhan had lived his life as an addict and a drug dealer and had not yet "gotten the message" that people who deal in large quantities of life-destroying drugs will be severely punished. Sentencing Tr., ECF No. 431 at 40. The court commented that Spruhan had received a "tremendous break" off the guidelines and that the 180-month sentence was "appropriate and necessary." Id. at 41.

Since being incarcerated, Spruhan has had only one disciplinary infraction, for refusing a work assignment. Inmate Discipline Report, ECF No. 584-1. He has taken many classes, including classes on heating and air conditioning, forklift certification, commercial driver's license, auto mechanics, and bookkeeping. Inmate Education Data, ECF No. 584-1 at 1–2. He is categorized as being at low risk for recidivism. Id. at 3.

Taken together, Spruhan's history and characteristics weigh in favor of a sentence reduction. Although he sold a lot of drugs in the community, he appears to have been motivated in part by his own addiction. It is notable that he was never was accused of

17

possessing a firearm and since being incarcerated has never been disciplined for a violent offense.

Turning to the next factors, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the court finds that a reduced sentence would be sufficient to accomplish these goals. A sentence of 156 months is substantial, and the court does not believe that additional time is necessary to achieve the punitive and deterrent goals of punishment. Nor does the court find that additional time is necessary to provide Spruhan with educational or vocational training, medical care, or other correctional treatment.

Looking at the kinds of sentences available and the applicable guidelines range, as discussed above, Spruhan would face a statutory mandatory minimum sentence of 120 months for his offense if he were sentenced today, and his guidelines range would be 210 to 262 months. The fact that Congress has reconsidered the mandatory minimum sentence to be applied when a person has served less than 12 months on a prior drug offense weighs in favor of a reduced sentence.

Finally, considering the need to avoid unwarranted sentencing disparities, the court notes that Spruhan received the second-highest sentence in the conspiracy and reducing his sentence by 24 months does not create an unwarranted sentencing disparity between him and

his codefendants. His sentence is still lower than the sentence of one codefendant and higher than those of the other codefendants.

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Spruhan's case. Given the circumstances of this case, including Spruhan's history and characteristics, and the changes in 18 U.S.C. § 841(b)(1)(A) brought about by the First Step Act, the court concludes that a sentence of 156 months is appropriate. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Spruhan's conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public.

### III.

For the above-stated reasons, the court will **GRANT in part** Spruhan's motion for compassionate release, ECF No. 584, and reduce his sentence to 156 months, to be followed by a 5-year term of supervised release. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered: June 23, 2023

Michael F. Urbanski
Chief United States District Judge